IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| HAZEL CREDLE, *et. al*,<br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 11-cv-03610-AW<br>*<br>*<br>*<br>* |

*****************************************************************************

**Memorandum Opinion**

The matters currently before the Court are Defendant Science Systems and Applications, Inc.'s Motion to Dismiss, Doc. No. 58, and Plaintiffs' Motion for Leave to File an Amended Complaint, Doc. No. 59.  The Court has reviewed the motion papers submitted by the parties and finds that no hearing is necessary.  *See* Loc. R. 105(6) (D. Md. 2010). For the reasons articulated below, the Court will deny as moot Defendant's Motion to Dismiss and grant Plaintiffs' Motion for Leave to File an Amended Complaint.

**I.      Factual & Procedural Background**

   A.     Factual Background

The following facts are drawn from the Complaint except where otherwise noted. This action arises from the tragic, highly publicized, and as-yet unexplained sinking of the F/V Lady Mary. By the time the U.S. Coast Guard arrived off the coast of Cape May, New Jersey in the early morning of March 24, 2009, the scalloping vessel was gone and only two crewmembers were found alive.  Ultimately, following their extended exposure to the frigid Atlantic waters,

only one survived.  Plaintiffs are relatives of four of the deceased crewmembers.  This action does not concern the cause of the F/V Lady Mary's sinking, which as yet remains a mystery.  Rather, Plaintiffs allege that Defendants' negligent failure to properly secure emergency response mechanisms led to a gross delay in the rescue effort.

The F/V Lady Mary was equipped with an emergency position-indicating radio beacon (hereinafter an "EPIRB"), which was working properly the morning of March 24, 2009 and sent out a distress signal as the vessel was sinking. Compl. ¶¶ 18–19.  Each vessel registers its EPIRB device with Defendant, the National Oceanic and Atmospheric Administration ("NOAA"),[1] which is the government entity responsible for monitoring EPIRB distress signals and communicating the need for emergency assistance to the U.S. Coast Guard.  Compl. ¶ 21.  Registration of the EPIRB device enables the NOAA database to correctly identify the associated vessel and its location in the event of an emergency. Compl. ¶¶ 19, 21.

The F/V Lady Mary registered its EPIRB in January 2007 with Defendant Science Systems and Application, Inc. ("SSAI"), an independent government contractor of NOAA.  Compl. ¶ 22.  In order to register an EPIRB device on the NOAA database, SSAI must properly record the unique identification number associated with that vessel's EPIRD.  *Id.*  In the case of the F/V Lady Mary, however, that unique identification number was improperly recorded by SSAI—an "0" was recorded in the NOAA database instead of a "C".  *Id.*

The F/V Lady Mary began sinking at around 5:40 a.m. on March 24, 2009, about 65 miles off the shores of Cape May.[2]  Compl. ¶ 23.  Although the vessel's EPIRB device activated correctly and sent an emergency distress signal to the NOAA, the signal came in as

---

[1] Due to requirements of the Suits in Admiralty Act, 46 U.S.C. 3091 *et seq.*, the United States serves as named defendant in this action in lieu of the NOAA, its federal agency.  *See* 46 U.S.C. § 30903; Compl. ¶ 5.
[2] The Complaint and Plaintiffs' proposed amended Complaint list the date of the sinking as March 29, 2009, *see* Compl. ¶ 23, Proposed Am. Compl. ¶ 17; however, the Court takes judicial notice of the fact that the sinking occurred the morning of March 24, 2009.

"unregistered" due to the earlier transcription error. *Id.* Without the correct registration information, the NOAA was unable to obtain the location or identity of the vessel in distress and was forced to wait for a low-earth orbiting satellite to pass over and identify the location of the transmitting EPIRB. Compl. ¶ 24. To compound matters, the satellite had passed over the vessel shortly before it began to sink, meaning that the NOAA had to wait a significant period of time—87 minutes—before the satellite passed again. Compl. ¶¶ 24–25. The location of the F/V Lady Mary was finally pinpointed at 7:07 a.m., and the Coast Guard deployed. By the time the Coast Guard reached the location of the sunken vessel, however, rescuers were able to pull only two living crewmembers from the chilly Atlantic waters, only one of whom subsequently survived. Compl. ¶ 25.

B.     Procedural History

The procedural history of this case is particularly relevant given Plaintiffs' present motion for leave to amend their Complaint after expiration of the deadline set by the scheduling order. The Court notes its concern with Plaintiffs' failure to comply with the scheduling order extension or to act with diligence in addressing material errors in the Complaint of which Plaintiffs' counsel were aware. These events are particularly concerning given the serious nature of Plaintiffs' claims and the interests of justice in having such claims properly pled and litigated.

Plaintiffs brought this action against SSAI and the United States on March 23, 2011, in the U.S. District Court for the District of New Jersey. Doc. No. 1. On August 12, 2011, SSAI moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Doc. No. 21. In addition to contending that the District of New Jersey did not have personal jurisdiction over SSAI, SSAI contended that Plaintiffs' claims were preempted by the Death on the High

Seas Act ("DOHSA"), 46 U.S.C. §§ 30301-30308 (2010). *Id.* On December 14, 2011, the New Jersey district court found that it did not have personal jurisdiction against SSAI and transferred the instant matter to this Court, the District of Maryland. Finding itself without jurisdiction over SSAI, the New Jersey district court declined to proceed to the merits of SSAI's preemption argument. It is worth noting, however, that Plaintiffs have since acknowledged that their claims can be brought only under the DOHSA, which provides a remedy for any "wrongful act, neglect, or default" that causes accidental death occurring on the high seas. 46 U.S.C. § 30302.

Shortly after the instant matter was transferred, this Court issued a scheduling order providing, *inter alia*, that the parties must submit any requests for modification by January 18, 2012. Doc. No. 47 at 1. On January 18, 2012, the parties filed a joint motion to modify the scheduling order which provided that Plaintiffs would file an amended Complaint on January 31, 2012. Doc. No. 54. The Court gathers from the declaration of Andrew D. Kaplan, counsel for SSAI, that the purpose of the amendment was to remedy the DOHSA-related deficiencies in Plaintiffs' Complaint.

Plaintiffs did not file an amended Complaint by the January 31 deadline. Plaintiffs contend that their delay was due to their preoccupation with determining whether to add another Plaintiff to the suit who they ultimately determined could not be added. Plaintiffs explain that the prospective Plaintiff had approached them "only on January 21, 2012." Doc. No. 64 at 3. Pursuant to the Court's paperless order of January 20, 2012, however, Plaintiffs were on notice that their amended Complaint was due January 31, and Plaintiffs have provided no explanation as to why they did not move for an extension of time either before or after the January 31 deadline.

On February 21, 2012, SSAI filed its second motion to dismiss, reiterating that Plaintiffs' claims may only be brought under the DOHSA. *See* Doc. No. 59. In response, on March 9, 2012, Plaintiffs filed the present motion for leave to amend their Complaint to state only causes of action under the DOHSA. *See* Doc. No. 59. Plaintiffs contend that the Court should freely give leave to amend their Complaint pursuant to Fed. R. Civ. P. 15(a)(2), that allowing amendment will not prejudice Defendants, and that Plaintiffs acted in good faith in seeking amendment.

## II.     Standard of Review

Once the scheduling deadline to file an amended complaint has passed, the moving party must satisfy the requirements of both Fed. R. Civ. P. 15(a)(2) and 16(b)(4) before a court may grant leave to amend a pleading. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298–99 (4th Cir. 2008). The "good cause" standard of Rule 16(b)(4) must be met as a threshold matter before the Court will consider whether the less exacting standards of Rule 15(a)(2) have been satisfied. *See id.* at 298.

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause requirement is met by showing that, despite diligence, the proposed claims could not have been reasonably brought in a timely manner. *See Montgomery v. Anne Arundel County, Md.*, 182 Fed. App'x. 156, 162 (4th Cir. 2006). The factors to be considered in discerning good cause are the "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010) (citation omitted).

Once the movant has met the burden of showing good cause, the court's inquiry shifts to the standard under Rule 15(a)(2) providing that a court should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend a pleading should be denied only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted).

**III.    Analysis**

In their Motion for Leave to File an Amended Complaint, Plaintiffs contend that the Court should apply the more lenient standard of Rule 15(a)(2) and give leave to amend freely as "justice so requires." Due to the fact that Plaintiffs failed to amend their Complaint by the January 31, 2012 scheduling order deadline extension provided by the Court, however, Plaintiffs will have to meet the more stringent "good cause" standard of Rule 16(b)(4). *See*, *e.g.*, *Nourison Rug*, 535 F.3d at 298–99. In determining whether good cause has been shown to excuse the delay, the Court will consider the danger of prejudice to Defendants, the extent of the delay and its impact on the instant proceedings, the reason for the delay, and whether Plaintiffs acted in good faith. *Tawwaab*, 729 F. Supp. at 768–69 (citation omitted).

Despite the Court's concern as to the delay and lack of diligence exhibited by Plaintiffs' counsel in this matter, the Court finds good cause to grant Plaintiffs' motion to amend. The Court acknowledges that Plaintiffs' counsel had a duty to act with diligence in amending Plaintiffs' Complaint after SSAI's August 12, 2011 Motion to Dismiss pointed out crucial, material deficiencies therein. While the nearly seven-month gap between the time Plaintiffs became aware of the Complaint's deficiencies and the time they sought leave to amend is

certainly concerning, it is not this delay as to which good cause must be shown. Rather, Plaintiffs must show good cause only as to their delay in filing their amended Complaint a little over a month after the January 31, 2012 scheduling order deadline.

Although the length of this delay was not itself egregious, the Court also considers the potential prejudice to SSAI, who, as Plaintiffs were aware, had to file its motion to dismiss by February 21, 2012. Due to Plaintiffs' delay in filing their amended Complaint, SSAI filed a second motion to dismiss based on the DOHSA preemption issue. SSAI's counsel attests that filing this second motion to dismiss took more than minimal effort, since SSAI was required to research and incorporate into its second motion the governing cases from this circuit, as opposed to the Third Circuit. By sitting on their amended Complaint with the knowledge that SSAI would be forced to re-file its motion, Plaintiffs created a real risk of prejudice to Defendants. Although it is a close call, however, the Court finds that the time spent by SSAI to basically re-file its motion was not so great as to prejudice Defendants. Moving forward, the amendment of Plaintiffs' Complaint results in no prejudice to Defendants because Plaintiffs are alleging no new facts, and Defendants have been aware since at least August, 2011 that Plaintiffs have potentially viable DOHSA claims.

Moreover, Plaintiffs have not shown any lack of good faith. Their delay does not appear to be a litigation strategy, as it seems highly improbable that such a delay would have inured to Plaintiffs' benefit. In fact, Plaintiffs' delay in filing their amended Complaint, given the fatal deficiencies in their original Complaint, created a real risk that these claims would never be adjudicated. Had the Court denied Plaintiffs' motion to amend, this case would have been left without a viable Complaint and the Court would have been forced to dismiss it. Given that the

limitations period on Plaintiffs' DOHSA claims has recently passed, Plaintiffs would likely have lost any opportunity to litigate their claims.

For the reasons discussed above, the Court finds that good cause has been shown to excuse Plaintiffs' delay under Rule 16(b)(4). Additionally, given that the Court has found no bad faith or prejudice and that amendment will not be futile, Rule 15(a)(2) has likewise been satisfied. Plaintiffs are cautioned, however, that the Court will not tolerate further delays or failures to follow deadlines set forth in the Local Rules, and that any subsequent delays will be closely scrutinized by the Court.

## IV. CONCLUSION

For the foregoing reasons, SSAI's Motion to Dismiss will be denied as moot and Plaintiffs' Motion for Leave to File an Amended Complaint will be granted. A separate order will follow.

| | |
|---|---|
| April 23, 2012 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |